IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| RICHARD GOMEZ, an individual, | ) ) | Case No. CV 03-421-S-MHW |
|  | ) ) |  |
| Plaintiff, | ) ) | **ORDER** |
|  | ) |  |
| v. | ) ) |  |
| MASTEC NORTH AMERICA, INC., a Florida corporation; RENEGADE OF IDAHO, INC., a Florida corporation; MASTEC SERVICES COMPANY, INC., a Florida corporation, | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**I.
Procedural background.**

On January 5, 2006, the Court issued a Memorandum Decision and Order ("Decision") (docket # 89), in which summary judgment was granted in part and denied in part. The Court disagreed with MasTec that Gomez would not be entitled to a bonus for the years that he did work for MasTec under the oral agreement for employment for the reason that it would be possible for the conditions of the earn out bonus to be completed within one year, on a year-to-year basis, during Gomez's actual time of employment. Under these circumstances, the bonus

agreement would not be required to be in writing and the statute of frauds would not apply to the bonus during the actual years worked. However, because there were disputed issues of material fact as to what exactly were the terms of the bonus agreement were and how it was to be computed, the Court was precluded from entering summary judgment on that aspect of Gomez's claim under count II of the complaint. This issue remains to be tried before a jury.

Following the issuance of the Decision, Plaintiff filed a motion to alter or amend the Memorandum Decision and Order (docket # 90), filed January 11, 2006; as well as a motion for reconsideration of the Memorandum Decision and Order (docket # 94), filed on February 17, 2006. Those matters are now before the Court for consideration.

## II.
## Standards of Review.

**A.     Motion to alter or amend judgment.**

A motion to alter or amend a judgment is governed by Federal Rule of Civil Procedure 59. The Ninth Circuit has held that: "[a]mendment or alteration is appropriate under Rule 59(e) if: (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *See Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001).

**B.     Motion for reconsideration.**

A motion for reconsideration is governed by Fed. R. Civ. P. 54 and the following standard of review applies:

> (1) There are material differences in fact or law from that presented to the Court, and, at the time of the Court's decision, the

> party moving for reconsideration could not have known of the factual or legal differences through reasonable diligence.
>
> (2) There are new material facts that happened after the Court's decision;
>
> (3) There has been a change in the law that was decided or enacted after the court's decision; or
>
> (4) The movant makes a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision.
>
> No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion.

*Motorola, Inc. v. J.B. Rodgers Mechanical Contractors,* 215 F.R.D. 581, 586 (D. Ariz. 2003).

### III.
### Analysis.

**A. Motion to Alter or Amend Order.**

The Plaintiff requests that the Court reconsider its decision to dismiss Count Five of the Second Amended Complaint, alleging a breach of the Idaho Wage Claim Act, Idaho Code § 45-601, *et seq.* ("Act"). Plaintiff argues that the 2002 bonus, which is still at issue as a result of the Court's January 5 Decision, should be considered "wages" under that Idaho Wage Claim Act, and if awarded by the jury, subject to being trebled. The Defendants oppose this motion on the grounds that the "bonus" does not constitute "wages" within the meaning of the Act because the bonus was actually consideration in support of the 'covenant not to compete' aspect of the sale of business contract.

In support of his position, the Plaintiff cites a series of Idaho appellate decisions where it was determined that a "bonus" can constitute "wages" under the Act. *See Rodwell v. Serendipity*

*Inc.,* 99 Idaho 894, 591 P.2d 141 (1979);  *Bilow v. Preco, Inc.,* 132 Idaho 23, 28, 988 P.2d 23, 28 (1998); and *Neal v. Idaho Forest Industries, Inc.,* 107 Idaho 681, 683, 691 P.2d 1296, 1298 (1984).  The Court has reviewed these decision and they stand for the proposition cited by the Plaintiff.  If a bonus is part of a compensation package for an employee, then it is considered to be wages under the Act, and if improperly denied to the employee, it can be subject to the treble damage provision of the Act.

     The Defendants do not dispute the ruling of these cases, but they argue the cases do not apply here because the "bonus" was a component of the covenant not to compete agreed to by the Plaintiff at the time the business was sold to MasTec.  Section 6.3 of the Asset Purchase Agreement discusses consideration of the covenant not to compete and states that:

> In consideration *of the purchase* of the Acquired Assets by Buyer, Seller and the Member agree that from Closing until five years from the Closing, Seller or Members will not:....    (Emphasis added)

The agreement then goes on to describe that the sellers would not engage in any competing businesses or interfere with any existing clients or potential customers.  There is nothing in this agreement which stated that the covenant not to compete clause would also apply to any subsequent employment agreement between MasTec and the Plaintiff.  Plaintiff  alleges in his Second Amended Complaint,  at paragraph 16 & 17,  that:

> [I]n consideration for his agreement to the five-year non-compete provision, Gomez reached an agreement with Dennis Dayley, MasTec's agent, employee and representative, that Gomez would be employed with MasTec in charge of MasTec's Boring Division. The employment agreement called for a base salary to Gomez of $120,000 per year plus expenses.  The employment agreement further provided for an 'earn out bonus' equal to 7% of the boring division profits in excess of a 25 % profit margin for the division.

Order - Page 4

While there may be some inconsistency between what was consideration for the covenant not to compete, as described in the Asset Purchase Agreement of the business, and Plaintiff's recitation of what the reasons were behind his oral employment agreement, it does not change the Court's view that there existed a basic agreement for salary and bonus to be paid to Plaintiff as part of his employment relationship with MasTec. Defendants certainly would not argue that the $120,000 salary did not constitute "wages," as defined under the Act, and the Court can see no difference with the alleged bonus.

Even if one were to consider that this fell under the broad umbrella of having Plaintiff work for MasTec, as opposed to some other business, this would not take it outside of the Act as interpreted by the Idaho Court of Appeals. In *Neal,* the plaintiff there agreed to stay with the new company that bought the old business through the pending sale and liquidation in return for a promised bonus. The plaintiff complied, however, the employer refused to pay the promised bonus. The Idaho Court of Appeals found the unpaid retention bonus did constitute "wages within the meaning of the Act." It was, just as in this case, part of the agreed-upon compensation package within the employment contract. *Neal* at 682, 691 P.2d at 1297.

The Court will reinstate that portion of the Second Amended Complaint that alleges that the bonus falls within the Act. Unless sounds reasons exist otherwise, the jury will need only to decide the amount of the bonus at issue, and any amount awarded by the jury, would be trebled post-trial by the Court as a matter of law, without the jury being separately instructed on it at trial, under the Idaho Wage Claim Act.

## III.
## Motion for Reconsideration.

Plaintiff requests that the Court reconsider its Memorandum Decision and Order entered on January 5, 2006, in particular the portion granting summary judgment to the Defendants on Count One and Three of the Second Amended Complaint.  Count One alleged that MasTec breached a subcontractor's agreement between Intermountain Drilling Co., LLC., ("Intermountain") and Idaho Renegade, Inc.  Count Three alleged that MasTec breached the implied duty of good faith and fair dealing under the subcontractor agreement.

Plaintiff contends that there is no notice that MasTec and Renegade of Idaho, Inc. are the same corporate entity and therefore, Renegade of Idaho, Inc. is not entitled to the benefit of the indemnification clause in the Asset Purchase Agreement executed between MasTec and Intermountain Drilling, LLC., of which Plaintiff ("Gomez")  was the managing partner.

The Defendants argue that the motion for reconsideration is untimely and that there is no factual or legal basis for Plaintiff's argument.  Defendants assert that a majority of the arguments made by Plaintiff were considered and discussed in the original decision and are therefore are not properly raised in a motion for reconsideration.

The Court will move past the argument that the motion to reconsider is not timely so that it can go directly to the merits of the motion.  Gomez' first argument is that the original subcontractor's agreement (June 9, 2000) that plays into this dispute was between Intermountain and Renegade I (as noted in the January 5, 2006 decision, Renegade I became Renegade II when MasTec purchased Renegade I in June, 2000, and assumed its various subcontractor agreements).

The Asset Purchase agreement and the indemnification provisions the Court relied on in arriving at its original decision was between MasTec and Intermountain.  Gomez now asserts:

> Although Renegade of Idaho is, like MasTec, NA, a subsidiary of MasTec, Inc., Renegade of Idaho and MasTec, NA are not the same entity.  The Asset Purchase Agreement was an agreement between MasTec, NA and Intermountain Drilling LLC (of which Plaintiff was a member).  Renegade of Idaho, Inc., was not expressly or by implication made a party to the agreement.  Thus, by granting summary judgment on Counts One and Three of Plaintiff's Complaint, the Court has given Renegade of Idaho, Inc., the benefit of an agreement to which they were not a party.

Plaintiff's Memorandum in Support of Plaintiff's Motion for Reconsideration, docket # 94, at 3-4.

The short answer to this argument is that the Asset Purchase Agreement specifically states that Gomez, as a signatory to agreement, agrees to indemnify the Buyer (MasTec North America, Inc.) "*and its.....affiliates*" from and against all claims or demands arising form any claim of the Seller that is not specifically assumed by the Buyer pursuant to the Asset Purchase Agreement.  There is no dispute that Renegade II is an affiliate or a subsidiary of MasTec.  And everyone knew that a big component of the sale was the amount due on invoices that had been submitted to Renegade II for payment up to a certain point in time.

For Gomez to now argue that Renegade II was not an affiliate of MasTec at the time of closing of the sale of the business is without merit or support in the record.  As discussed at length in the original decision, it was Gomez's decision not to reveal the existence of the disputed invoices at any time leading up to the closing on the sale, either to his partners in the LLC or to MasTec, when he knew that a component of the purchase price was the outstanding Renegade invoices as of a certain date.

Gomez again argues that the January 31, 2001, "Partial Subcontract Release" signed by himself related to specific invoices, and did not include the invoices in dispute. Assuming *arguendo* that the Plaintiff is correct, and that the January 31, 2001, release related to a specific billing for one aspect of the job, this does not explain away the express language of the Release. As of the date of the January 31 Release, Gomez represents that, in consideration of the payment, at least for the work done in December of 2000, he released Renegade II of *any claim or sums of money due as of the date of the release* for which, "the Subcontractor or any person or entity claiming through or on behalf of the Subcontractor (the Releasor) *now has, through the date of this Release, against the Contractor....*" (Emphasis added.) The Release further provides that the Subcontractor represents that, as of the date of the Release, he has paid in full all others that have performed, "any labor or supplied any materials or equipment in connection with the Project, . . .." And, finally, the Subcontractor agreed to indemnify the Contractor against any claims made against Contractor in the future. Based on these representations, MasTec would have had to have been clairvoyant to realize that, when they paid Intermountain in January 31, 2001, based on Gomez' express representations set forth above, Gomez had in his back pocket potential invoices # 1184(a) and (b), totaling $189,494, for his own account that would be submitted months later for work done in December, 2000.[1]

Based on all of the grounds discussed in the original Decision, and to a very large extent revisited here, the Motion for Reconsideration will be denied.

---

[1] Invoice # 2998, dated April 23, 2001, for $72,067, does not set out the dates the work was done, as did the other invoices. Gomez states it was for work done in February, immediately prior to closing, so this work would not be covered by the express language of the January 31, 2001, Partial Release. However, any claim made for the amount of this invoice would be covered by the representations made by Gomez in the Asset Purchase Agreement.

**Order - Page 8**

**ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's motion to alter or amend the Memorandum Decision and Order (docket # 90), filed January 11, 2006, is GRANTED in accordance with the discussion above.

2) Plaintiff's motion for reconsideration of the Memorandum Decision and Order (docket # 94), filed on February 17, 2006, is DENIED.

DATED: June 2, 2006

_____
Honorable Mikel H. Williams
United States Magistrate Judge